**STRENCH, District Director, v. PEDARIS.**

**No. 489.**

Circuit Court of Appeals, Tenth Circuit.

Dec. 21, 1931.

COTTERAL, Circuit Judge, dissenting.

Albert D. Walton, U. S. Atty., of Cheyenne, Wyo., for appellant.

G. R. Hagens, of Casper, Wyo., for appellee.

Before COTTERAL and PHILLIPS, Circuit Judges, and POLLOCK, District Judge.

POLLOCK, District Judge.

This is an appeal from an order entered in a habeas corpus proceeding discharging George Pedaris from the custody of W. R. Mansfield, District Director of the United States Immigration Service, and from imprisonment and restraint under a deportation warrant issued on October 26, 1927, by the Assistant Secretary of Labor.

The questions presented are: (1) Was there any substantial evidence before the District Director that Pedaris was an inmate of a house of prostitution; (2) did Pedaris have a fair trial before the District Director before the order of deportation was issued against him.

If either of these questions be answered in the negative, the order of deportation should not have been made or be enforced, and the same are questions of law for decision by a court on an application by the alien, as was this case in the court below. Whitfield v. Hanges (C. C. A.) 222 F. 745, 746.

The charge under which Pedaris was arrested and tried for deportation was this: That he has been found an inmate of a house of prostitution.

The evidence established Frances Pedaris, his wife, practiced prostitution in a building owned by Pedaris and in a portion of which said building Pedaris conducted a coffee shop. Further, that Pedaris lived with his wife in this building as man and wife. There is no evidence found in the record that defendant acted as a pimp or in anywise aided his wife in any such practice, or that he in any manner profited from the practice of prostitution by his wife. The statute under which Pedaris was arrested was the Act of February 20, 1907, c. 1134, § 3, 34 Stat. 898, which before amendment read as follows: "Any alien woman or girl who shall be found an inmate of a house of prostitution or practicing prostitution, * * * within three years after she shall have entered the United States, shall be deemed to be unlawfully within the United States and shall be deported as provided by sections twenty and twenty-one of this Act."

As amended by Act of March 26, 1910, § 2, 36 Stat. 263, the Act reads, as follows: "Any alien who shall be found an inmate of or connected with the management of a house of prostitution or practicing prostitution after such alien shall have entered the United States, * * * shall be deemed to be unlawfully within the United States," etc.

The question presented to the trial court was whether under this act a man could be held guilty of being an inmate of a house of prostitution as was the charge made against Pedaris in the warrant issued by the Assist-

ant Secretary of Labor under which Pedaris was attempted to be deported. While it is apparent the act before amendment was limited by its terms to members of the female sex, yet it is entirely plain it was so amended as to include members of the male sex if they inhabited a house of prostitution and took part in the immoral practice carried on therein, or participated in the profit derived from the practice. As has been seen, the evidence in this case fails to so show, and on this ground alone the judgment in the habeas corpus case appealed from would have to be affirmed. See Katz v. Commissioner of Immigration (Circuit Court of Appeals, Ninth Circuit) 245 F. 316; Backus v. Owe Sam Goon (C. C. A.) 235 F. 847; Backus, Commissioner of Immigration v. Katz (C. C. A.) 245 F. 320.

■ However, the further question whether Pedaris had a fair trial before the District Director of the Immigration Service is greatly to be doubted. The record shows before the hearing was entered upon the director who conducted the same, one Mr. Mansfield, informed Pedaris "this order will be the same as it was before," meaning, as the former order from which Pedaris had been released on habeas corpus had been one of deportation, the same order would enter against him in this hearing about to be had, and it was so entered. Now, while on that hearing all the forms of law prescribed may have been observed in this matter before the order of deportation was entered from which Pedaris seeks his release in this habeas corpus case, and on which the government has appealed, yet we are of the opinion a part of a fair trial resides in the fact that the trial judge, tribunal, or official charged by the law with the duty of hearing the matter, before granting an order of deportation, or any like order, must not before hearing have prejudged the case, because one who has prejudged the case cannot be fair and impartial if he so wishes, or grant a fair and impartial trial of the matter.

It follows, the writ was rightly granted and must be affirmed.

COTTERAL, Circuit Judge (dissenting).

The appellee was not entitled to be released from deportation, because he was accorded a fair hearing by the Department of Labor upon the charge preferred against him; that charge was supported by substantial evidence, and there was no erroneous application of the law in the proceeding. Ng Fung Ho v. White, 259 U. S. 276, 42 S. Ct. 492, 66 L. Ed. 938; Whitfield v. Hanges (C. C. A.) 222 F. 745.

The appellee's petition for the writ of habeas corpus and the answer of the District Director put those matters in issue. When the petition was filed on June 8, 1928, the District Court issued an alternative writ for the production of the petitioner and for a hearing. On July 5, 1928, after the hearing, at which the parties appeared and introduced their evidence, the court made an order that the petitioner had failed to show he did not have a fair trial, and that the charge preferred against him was not supported by any substantial evidence and was null and void, and awarded a trial of the case de novo upon the merits, meantime admitting the petitioner to bail. In a memorandum opinion, the court expressed doubt whether an unfair hearing was shown. Later, the petitioner was finally discharged from custody on a holding that it appeared from the evidence the warrant of deportation was null and void and no lawful cause was shown for the restraint.

The majority opinion holds the record shows that prior to the hearing the Immigration Director who conducted it informed the appellee an order of deportation would be the same as in a former case, and that therefore the Director had prejudged this case and could not grant the appellee a fair hearing. The former proceeding arose on a kindred charge, resulting in a discharge from custody. It is true appellee testified that the Director made the statement in his attorney's office and his attorney corroborated the testimony; but the Director denied making the statement. The only finding of the trial court on the subject was that already referred to as being made upon the hearing pursuant to the alternative writ, when the court had the testimony mentioned before it. The majority therefore apparently accepted the testimony of appellee and his attorney.

I do not agree that where one is charged with an offense rendering him liable to deportation, takes no exception to the qualifications of the examiner and submits to a hearing before him, he may, after the examiner has made his report and the Labor Department has ordered the deportation, question the fairness of the hearing in the manner here attempted, and thereby render

the entire proceeding ineffectual. I prefer to hold the objection comes too late to be worthy of notice. But the denial of the statement imputed to the Director, charged with serious duty and sworn to administer it, ought to be accepted as decisive upon the character of the hearing in this case, especially as the hearing itself was fair, and due opportunity was accorded to appellee to present his evidence, and both he and his attorney participated in the hearing. In my opinion, this court should hold that the appellee had a fair hearing, as it is defined in such cases. Whitfield v. Hanges (C. C. A.) 222 F. 745.

The majority opinion correctly finds the evidence established the fact that appellee resided with his wife in a house where she practiced prostitution. But it was ruled the evidence was insufficient in failing to show he also took part in the immoral practice carried on therein or participated in the profit derived from it. The statute does not make those elements necessary to conduct justifying deportation. It describes the acts which render an alien subject thereto, and one of them occurs when he is found an inmate of a house of prostitution. That was the charge in this case. The majority holds the unlawful conduct must consist of an additional element. Doubtless, the use in a statute of the disjunctive may be read as a conjunctive, when that meaning is obvious or essential; but as the statute is plain, no such rule of correcting a legislative error is warranted in this case. 25 R. C. L., p. 977; 36 Cyc. p. 1123. The word "inmate" is defined by Webster as "One who lives in the same apartment or house as another; a fellow lodger," etc., and by the Century Dictionary as "One who is a mate or associate in the occupancy of a place," etc. I regard the interpretation of the statute by the majority as inadmissible.

The District Court also commented on the hardship of deporting the appellee after being absent for many years from his native country. But the right of an alien to remain in this country was conditioned by Congress on his living up to certain requirements. Newcomers and old residents are subject to the same condition, and the courts have no power to intervene and say it shall not be applied alike to all offending aliens.

The order discharging the appellee should therefore be reversed to the end that the warrant of deportation may be executed.