**PANTAZES v. HAYS, Divisional Director of Immigration and Naturalization, et al.**

**ZAHARIADES v. SAME.**

Nos. 622, 1076.

District Court, N. D. Iowa, Central and Western Divisions.

Aug. 14, 1936.

J. E. Williams, of Mason City, Iowa, for petitioner Pantazes.

L. R. Boomhower, of Mason City, Iowa, for petitioner Zahariades.

Counsel for the Divisional Director of Immigration and Naturalization, in each of these cases;

Wm. B. Danforth, Asst. U. S. Atty., and E. G. Dunn, U. S. Atty., both of Mason City, Iowa, for respondents.

SCOTT, District Judge.

On the 30th day of July, 1936, petitioner Stilianos G. Pantazes, or Steve Pantages, filed his petition in the Central Division of the Northern District of Iowa, praying for writs of certiorari and habeas corpus and that the writ of certiorari be directed to Frank Hays, Jr., Divisional Director of Immigration and Naturalization, Omaha, Neb., and .that the writ of habeas corpus be directed to Earl P. Amundson, bondsman, Mason City, Iowa. And on the 18th day of July, 1936, petitioner Ioannis, or John, Zahariades, filed his petition in the Western Division of the Northern District of Iowa, praying for writs of certiorari and habeas corpus and that the writ of certiorari be directed to Frank Hays, Jr., Divisional Director of Immigration and Naturalization, Omaha, Neb., and that the writ of habeas corpus be directed to George Manolis, bondsman, Mason City, Iowa. By agreement of parties both cases were tried at Sioux City in the Western Division, one following immediately the other, and each upon the record as certified by the Divisional Director of Immigration. The petitions are substantially alike, and each alleges in substance that a warrant of deportation by the Secretary of the Department of Labor has issued against the petitioner, directing his deportation to Greece, of which country petitioner is a native and from which country petitioner is an emigrant and a resident alien in the United States, and has been such for many years. The petition challenges the fairness of the hearing in the deportation proceedings held at Mason City, Iowa, in the Pantages case at several sessions during the latter part of the year 1934, and again on reopening the case at several sessions during the year 1935, and in John Zahariades' case at a session held at Mason City, Iowa, on August 29, 1935.

The unfairness of the hearing originally and after reopening in Pantages' case rests upon the following conditions:

(1) That the government took substantially no testimony at the hearings, but the Immigration Inspector, prior to the first hearing and for the purpose of obtaining the original warrant of arrest, examined privately certain alleged prostitutes, peace officers, and other persons; took their statements in writing under oath and obtained the warrant of arrest and arrested the petitioner. That at the hearing these original statements were not produced or offered in evidence, and no witnesses were examined. That the Immigration Inspector in charge produced for examination by petitioner what he claimed to be copies of such original statements taken, and informed the petitioner that the originals would be considered by the Secretary of Labor in determining the question of his deportation. A number of the parties making the statements were produced and petitioner's counsel permitted to question them after having inspected the purported copies of statements theretofore taken in private by the inspector.

1054

(2) That the statements taken by the inspector, purported copies of which were produced, abound in hearsay testimony and baseless opinions of parties, some produced at the hearing, others not.

(3) That introduced into the record to be considered by the Secretary of Labor was a large quantity of testimony taken in another deportation proceeding against the alien substantially twenty years before.

In response to the writ of certiorari, Divisional Director Hays caused to be certified from the Department at Washington the entire original record in this case, and by stipulation of counsel for all parties the case was submitted upon that record, which included a large quantity of testimony taken in the case against Pantages about twenty years ago, which ultimately reached the Circuit Court of Appeals in this Circuit and was decided March 22, 1915, in Whitfield v. Hanges, 222 F. 745, 749.

It is without dispute in the record that the hearing was had as contended by the petitioner; that the original statements taken in private by the inspector were not produced or offered in evidence; that no witnesses were produced and examined, except such as made these original statements, and the only question of importance propounded by the inspector was to ask whether the previous statement made was true, to which the parties answered in the affirmative. The original statements taken by the inspector and certified in pursuance of the writ of certiorari do abound in hearsay testimony; were taken in private previous to the hearing; and substantially no testimony was offered by the government at the hearing; and the record as certified here under said writ of certiorari does include a large amount of testimony taken twenty years ago against the petitioner in the case referred to, and which was never introduced or mentioned at the hearing either as originally held or on the reopening of the case in 1935.

In the Zahariades case the procedure was identical with that which prevailed in the Pantages case, except that no ancient testimony was incorporated in the record.

To my mind there is but one meritorious question presented which touches the fairness of the hearing. That question is: Is a fair hearing accorded when an immigration inspector takes all of the testimony on behalf of the government ex parte and privately in advance of the warrant of arrest, reducing the same to writing largely in narrative form and in his own language, producing only a copy at the hearing and informing the alien that the original will be considered in his case, and then merely producing the witnesses and offering the alien the privilege of examining them? And this especially when the charge is that the alien has been found managing a house of prostitution, or music or dance hall or other place of amusement, or resort, habitually frequented by prostitutes, or where prostitutes gather, and where the principal and crucial witnesses are prostitutes.

The only clear guide which I have to follow in the holdings of the Circuit Court of Appeals of this Circuit is the pronouncement by the late Judge Walter H. Sanborn in Whitfield v. Hanges, supra, wherein the court says: "Indispensable requisites of a fair hearing according to these [principles just announced] fundamental principles are that the course of proceeding shall be appropriate to the case and just to the party affected; that the accused shall be notified of the nature of the charge against him in time to meet it; that he shall have such an opportunity to be heard that he may, if he chooses, cross-examine the witnesses against him; that he may have time and opportunity, after all the evidence against him is produced and known to him, to produce evidence and witnesses to refute it; that the decision shall be governed by and based upon the evidence at the hearing, *and that only;* and that the decision shall not be without substantial evidence *taken at the hearing to support it.*" (The italics are mine.)

I cannot reconcile the taking of all of the government's testimony ex parte and secretly before the hearing with a requirement "that the decision shall be governed by and based upon the evidence at the hearing, and that only; and that the decision shall not be without substantial evidence taken at the hearing to support it," with the practice followed in these cases. I am not forgetful of the principle that the practice and procedure at hearings before immigration officers in deportation cases need not follow the strict rules of procedure in courts of law. It seems to me notwithstanding, however, that the decision of the Circuit Court of Appeals in the Whitfield Case requiring the evidence of the government to be taken at the hearing is sound and in accord with the principles of due process of law. I therefore hold upon the

authority stated that the warrant of deportation in each of the cases under consideration is void; that the hearing in each of the cases under consideration was not in contemplation of law a fair hearing; that the writ of habeas corpus in each case should be sustained and the bail in each case exonerated; and that an order should be entered in each case consistent with this opinion and exception reserved in behalf of the respondents and the government.